JOHN H. HANNON v. JAMES M. GRIZZARD et al., Com'rs.

*Petition to Rehear—Office—Election—County Commissioners.*

1. The principle upon which a cause once decided in this Court will be reheard is again stated.

2. The duties imposed upon the Boards of County Commissioners in respect to the induction of persons to the offices to which they may have been elected are more than merely ministerial; they are *quasi* judicial; and for an honest error in their exercise the Commissioners are not liable either civilly or criminally.

3. The ruling in same case, reported in 96 N. C., 293, is re-affirmed.

This is a PETITION TO REHEAR the appeal determined at February Term, 1887, and reported in the 96 Vol. N. C. Rep., 293.

*Messrs. W. H. Day* and *J. M. Mullen,* for the plaintiff.
*Messrs. T. N. Hill* and *R. B. Peebles,* for the defendants.

SMITH, C. J. On the rehearing of the case of *Watson* v. *Dodd,* reported in 72 N. C., 240, the late Chief Justice uses this language: "The weightiest considerations make it the duty of the Courts to adhere to their decisions. No case ought to be reversed upon petition to rehear unless it was decided hastily, and some material point was overlooked or some direct authority was not called to the attention of the

11

Court." The rule is reiterated by READE, J., in *Hicks* v. *Skinner*, in the same volume, and by the present Court in *Haywood* v. *Daves, Devereux* v. *Devereux* and *Lewis* v. *Rountree*, reported in the 81st volume of the reports and decided at the same term.

The petition in the present case simply alleges an erroneous ruling in law in the former decision, setting out wherein it consists and is supported by the argument of one of our most eminent and learned lawyers, concurred in by another, by which a conclusion is reached adverse to our own.

No case is cited and no authority referred to in either, and so we are asked to reverse a judgment just rendered in the Superior Court and affirmed in this Court, merely upon a course of reasoning and without a compliance with those essential conditions on which a right to ask for a review and correction of a previous ruling is dependant.

The decision was not hastily reached, but only after a patient and protracted examination of the subject, a full interchange of views among the members of the Court, and a careful consideration of the authorities called to our attention and an investigation of our own. Under such circumstances and even after the numerous citations contained in the reargument, which are in the line of those produced at the first hearing, we might be content to leave the opinion and the course of reasoning that pervades it to its self vindication against the attacks now made upon its correctness and to declare our adhesion to it, nor do we deem it needful to rehearse what has been said or to fortify it with a new elaborate discussion.

The fallacy in the argument for the plaintiff lies in the assumption that the action of the Commissioners is purely and only ministerial, and hence the refusal to admit the plaintiff to the office is the denial of a personal right that entitles him to full damages for the loss occasioned by his being kept out of office. There was certainly no necessity

for laboring this point, for generally a refusal to perform an enjoined and plain legal duty is actionable at the instance of the injured party. But this is taking for granted the very matter in contest. The general jurisdiction to admit to County offices those who may have been chosen upon the electoral vote as counted and ascertained by the Board of County Canvassers, is given to the Board of County Commissioners, and this is exercised in an examination into the regularity of the returns of the result of the election, which when regular are conclusive of the election, the sufficiency of the official bond tendered and the administration of the required oath.

In the case of a Sheriff who has previously held the office, the board must go further and see that he is not delinquent in the payment of the taxes of a previous term. It is equally plain that an elected person, not competent to hold office under the Constitution, has no right to be admitted to office nor cause of action for being excluded. This necessarily implies an inquiry into his Constitutional capacity to take and exercise the functions of the office to which he may have been chosen, and if, in making it, the Commissioners commit an error in fact, they do not become personally responsible; it is an error of judgment alone. This forms no excuse when the error is one of law, because of the inexorable rule that presumes every person to know the law, and permits no excuse founded upon an alleged ignorance of it.

Now the jurisdiction committed to the Commissioners comprehends all that is essential to an induction into office, and if its exercise in an honest endeavor and purpose to perform what is deemed by them a duty to the public, they mistake and overstep the limits of that jurisdiction, in an inquiry into the capacity of the person elected, under the Constitution, whose mandates are alike obligatory on all, do they render themselves liable, criminally or civilly, for the consequences?

If not strictly judicial, these functions are *quasi* judicial at

least, so far as to give protection against mere errors of judgment, and the reverse holding would, we think, be fruitful in mischiefs to the public service and unjust to those engaged in it.

We propose to advert to a single case in our own reports, not hitherto referred to, in which the principle underlying our adjudication is directly and clearly recognized and declared, and is a conclusive authority for our own ruling.

In *Cunningham* v. *Dillard*, 4 D. & B., 351, the action was against a Justice of the Peace for accepting an insolvent surety against the plaintiff's objection upon an appeal to the County Court, the surety being the defendant's father. Delivering the opinion, GASTON, J., thus expresses the views of the Court: " Whether in granting the appeal and accepting the security the magistrate did not act in a *judicial* character and in a matter *within his jurisdiction* is a question that may be well worthy of deliberate examination. If he did then the action was not maintainable. The law is clear that in general no action can be supported against a Judge or Justice of the Peace acting judicially and in the sphere of his jurisdiction, however erroneous his decisions or malicious the motive imputed to him." *  *  *  " But if the act complained of be *not a judicial act then we concur with his Honor in the opinion that the defendant was not liable if he acted bona fide and according to his best information.*"

And so Chief Justice TANEY remarks in a case where suit was brought against the Post Master General for damages : " He committed an error in supposing that he had a right to set aside an allowance for services rendered upon which his predecessor in office had finally decided. But as the case admits that he acted from a *sense of public duty and without malice his mistake in a matter properly belonging to the department over which he presided can give no cause of action against him.*" *Kendall* v. *Stokes*, 3 Howard (U. S.), 98–99.

The principle enunciated by the Supreme Court of the United States seems equally to protect the defendants in executing the functions of their office in inducting one chosen by the electors into his office and exempts them from personal responsibility. After a careful and diligent study of a decision which counsel so confidently pronounce erroneous, we see no reason to reverse or change it, and therefore it must be affirmed and the petition dismissed.

Petition dismissed.